Citation Nr: 1518703 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 14-28 064 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Whether new and material evidence has been received sufficient to reopen a claim for entitlement to service connection for prostate cancer, and if so, whether service connection is warranted. 

2. Entitlement to service connection for a skin condition, to include chloracne.

3. Entitlement to service connection for a kidney condition, to include residuals of kidney cancer.

4. Entitlement to service connection for neuropathy of the bilateral lower extremities. 

5. Entitlement to service connection for a heart condition, to include ischemic heart disease. 




REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran, Spouse


ATTORNEY FOR THE BOARD

S. Hoopengardner, Associate Counsel


INTRODUCTION

The Veteran had active duty service from December 1956 to July 1977. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a January 2014 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

The Veteran testified at a February 2015 video-conference hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

Subsequent to the Statements of the Case issued in July 2014 (for prostate cancer claim) and October 2014 (for all other claims), various statements and documents from the Veteran were associated with the Veteran's claims file. To the extent that any of the received documents can be considered evidence, the Veteran filed his substantive appeals in July 2014 and December 2014 and this evidence is therefore subject to initial review by the Board because the Veteran did not request in writing that the Agency of Original Jurisdiction (AOJ) initially review such evidence. See 38 U.S.C.A. § 7105(e)(1) (West 2014).
This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. Also, a review of the electronic records maintained in Virtual VA was conducted.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2014). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for a skin condition, to include chloracne, a kidney condition, to include residuals of kidney cancer, neuropathy of the bilateral lower extremities and a heart condition, to include ischemic heart disease, are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. An August 2010 RO rating decision denied the Veteran's claim for entitlement to service connection for prostate cancer. The Veteran was notified of this decision and of his appellate rights, but did not appeal the decision, or submit new and material evidence within one year of the denial.

2. Evidence associated with the claims file after the denial in August 2010 is new evidence, and when considered with the previous evidence of record, relates to an unestablished fact necessary to substantiate the Veteran's claim.

3. Resolving reasonable doubt in the Veteran's favor, while stationed at the Korat Royal Thai Air Force Base (RTAFB), the Veteran served near the air base perimeter. As such, in-service herbicide exposure is conceded on a direct or facts found basis. 

4. Resolving reasonable doubt in the Veteran's favor, he has been diagnosed with prostate cancer, which became manifest to a degree of 10 percent or more after service.
 

CONCLUSIONS OF LAW

1. The August 2010 rating decision which denied entitlement to service connection for prostate cancer is final. 38 U.S.C.A. § 7105(c) (West 2002); C.F.R. §§ 3.104, 20.302, 20.1103 (2010).

2. New and material evidence has been received and the claim for entitlement to service connection for prostate cancer is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).

3. The criteria for entitlement to service connection for prostate cancer have been met. 38 U.S.C.A. §§ 1110, 1116, 1131 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Claim to Reopen 

The Veteran's previously denied claim for entitlement to service connection for prostate cancer is reopened, as explained below. As such, VA's fulfillment of its duties to notify and assist with respect to this issue need not be addressed at this time.

Legal Criteria

Generally, an unappealed RO denial is final under 38 U.S.C.A. § 7105(c) (West 2014). However, the Veteran may request that VA reopen his claim upon the receipt of "new and material" evidence. 38 U.S.C.A. § 5108 (West 2014). If new and material evidence is presented or secured with respect to a claim that has been disallowed, VA must reopen the claim and review its former disposition. Id.
New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2014).
The U. S. Court of Appeals for Veterans Claims (Court) interpreted the language of 38 C.F.R. § 3.156(a) (2014) as creating a low threshold, and viewed the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." Shade v. Shinseki, 24 Vet. App. 110, 121 (2010). The Court emphasized that the regulation is designed to be consistent with 38 C.F.R. § 3.159(c)(4) (2014), which "does not require new and material evidence as to each previously unproven element of a claim." Id at 120. 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

Analysis 

The Veteran's claim for entitlement to service connection for prostate cancer was denied by an August 2010 RO rating decision and directed to the Veteran's address of record. The August 2010 rating decision indicated that the basis for the RO's denial was, in part, that the Veteran was not exposed to herbicides while in-service. A May 2011 "note" in VBMS stated that the Veteran called regarding his claim for prostate cancer that he thought was still open. The note stated that the Veteran claimed he never received a notification letter regarding the claim and that he sent additional medical documents in support of the claim "a few months ago." The note stated to re-send the notification letter, though no record of this is contained in the Veteran's electronic claims file. The claims file contained a cover letter stamped August 2010 for the August 2010 rating decision. The claims file did not contain any medical records received between the August 2010 rating decision and May 2011 when the Veteran spoke with VA (as indicated by the May 2011 "note" in VBMS). The next documents were received from the Veteran in July 2013, when he filed a new claim. The Veteran's May 2011 contact with VA did not indicate any disagreement with the rating decision or a desire to contest the result. Moreover, notice of the decision was sent to the Veteran's address of record and there is no indication it was returned as undeliverable. As such, the Veteran did not appeal the August 2010 rating decision, nor submit additional evidence within one year of the denial (or the subsequent re-notification, if such occurred, in May 2011); therefore, it became final. 38 U.S.C.A. § 7105(c) (West 2002); C.F.R. §§ 3.104, 20.302, 20.1103 (2010).

The Veteran's current claim for entitlement to service connection for prostate cancer is based upon the same factual basis as his claim for entitlement to service connection which was denied in the August 2010 rating decision. As such, it is appropriate for the Board to consider this claim as a request to reopen the previously denied claim. See Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008). 

Since the final August 2010 rating decision, new evidence includes, but is not limited to, the Veteran's various statements regarding his service near the perimeter of the Korat RTAFB. This evidence is new, as it did not exist at the time of the final disallowance in August 2010. It is material, as it relates to an unestablished fact necessary to substantiate the claim, namely an in-service event, specifically in-service herbicide exposure. This evidence also raises a reasonable possibility of substantiating the claim and it is not cumulative or redundant of the evidence previously of record. Therefore, presuming the credibility of the evidence submitted, the Board finds that the evidence discussed above is new and material. See Justus v. Principi, 3 Vet. App. 510, 513 (1992). As such, the Board concludes that the Veteran's request to reopen the previously disallowed claim should be granted. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).


II. Service Connection for Prostate Cancer

Considering the favorable outcome detailed below, VA's fulfillment of its duties to notify and assist need not be addressed at this time with respect to the Veteran's claim for entitlement to service connection for prostate cancer.

Legal Criteria

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014). 

A Veteran who served in the Republic of Vietnam during the Vietnam era is presumed to have been exposed to certain herbicide agents (e.g., Agent Orange). 38 U.S.C.A. § 1116 (West 2014); 38 C.F.R. § 3.307 (2014). In the case of such a Veteran, service connection for certain diseases, including prostate cancer, will be presumed if they become manifest to a degree of 10 percent or more at any time after service. 38 U.S.C.A. § 1116 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014). 

VA has established a procedure for verifying exposure to herbicides in Thailand during the Vietnam Era. See VA Adjudication Manual, M21-1MR, Part IV, Subpart ii, Chapter 2, Section C.10.q (herein M21-1MR); Compensation and Pension Bulletin, May 2010. VA has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand for the purpose of eliminating vegetation and ground cover for base security purposes as evidenced in a declassified Vietnam era Department of Defense document titled, "Project CHECO Southeast Asia Report: Base Defense in Thailand." Id. Special consideration of herbicide exposure on a facts found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. Id. This allows for presumptive service connection of the diseases associated with herbicide exposure. Id. 

Under the procedures outlined in the M21-1MR, if a Veteran served at certain RTAFBs, including Korat RTAFB, during the Vietnam Era as a security policeman, security patrol dog handler, member of the security police squadron, or otherwise served near the air base perimeter, as shown by evidence of daily work duties, performance evaluations, or other credible evidence, then herbicide exposure should be conceded on a direct or facts-found basis. Id.

Analysis

As noted above, for a Veteran who has been exposed to herbicides in-service, if prostate cancer becomes manifest to a degree of 10 percent or more at any time after service, service connection will be presumed. Prostate cancer is rated under Diagnostic Code 7528 and a 100 percent disability rating is assigned for malignant neoplasms of the genitourinary system. A Prostate Cancer Disability Benefits Questionnaire (VA Form 21-0960J-3) from Dr. W.S. dated January 2014 noted a diagnosis of prostate cancer, with a date of diagnosis in 2002. Also noted was metastatic bone disease, with a date of diagnosis of January 2014. The status of the disease was noted to be active. Another Prostate Cancer Disability Benefits Questionnaire from a different doctor, Dr. S.W., dated February 2014 noted a diagnosis of prostate cancer, with a date of diagnosis in 2002 and a diagnosis of "met[astasized] to bone," with a date of diagnosis of January 2014. The status of the disease was noted to be active. Upon review, while these documents did not explicitly state that the Veteran had malignant neoplasms of the genitourinary system, they did suggest that he had active prostate cancer. Resolving reasonable doubt in the Veteran's favor, the Board concludes that the Veteran's prostate cancer became manifest to a degree of 10 percent or more after service. 

With regard to in-service herbicide exposure, the Veteran contends that he was exposed while stationed in Thailand during the Vietnam War. The Veteran's DD 214 (for dates of service of September 1969 to September 1973) noted that the station or installation at which effected was Korat RTAFB and the Veteran's DD 214 (for dates of service of September 1973 to July 1977) noted that the place of entry into current active service was Korat RTAFB. Other personnel records also indicated that the Veteran served at UBON RTAFB. See, e.g., January 1974 to July 1974 Performance Report. In a statement dated June 2, 2014, the Veteran stated that he was stationed at Korat and Ubon RTAFBs between 1973 and 1974. The Veteran stated that he was sent to Korat RTAFB for six months and stayed five months before being sent back to Texas and also that he was stationed at Ubon RTAFB. The Veteran's personnel records did not specifically state the dates he was stationed in Thailand, but based on the Veteran's statements and the personnel records of record, it is confirmed that the Veteran served at Korat and Ubon RTAFB. 

On the DD 214 for dates of service of September 1969 to September 1973, the Veteran's specialty title was noted as Machine Shop Technician, with a related civilian occupation of Machinist. On the DD 214 for dates of service of September 1973 to July 1977, the Veteran's specialty title was noted as Machine Shop Technician, with a related civilian occupation of Tool & Die Maker. At the February 2015 Board hearing, the Veteran testified that as a machinist, his duties included working on aircraft. The Veteran testified that while working on aircraft, he was approximately 75 feet from the base fence and perimeter. See Board Hearing Transcript, page 5. 

The Veteran's representative also stated that the Veteran's barracks were "less than 50 feet from the perimeter." See id. at page 8. With respect to Ubon RTAFB, the Veteran testified that "I really didn't pay that much attention to how far off were like I did at Korat." See id. at page 20. As such, it appears that the Veteran's service near the air base perimeter was limited to his service at Korat RTAFB. 

While the Veteran's specialty title of Machine Shop Technician is not obviously consistent with exposure to the air base perimeter, he has provided competent and credible statements that indicate his daily work duties required him to serve near the base perimeter. As there is no evidence to contradict the Veteran's statements, and resolving reasonable doubt in the Veteran's favor, the Board concludes that while stationed at the Korat RTAFB, the Veteran served near the air base perimeter and as such, in-service herbicide exposure is conceded on a direct or facts found basis. As the Board has concluded that the Veteran was exposed to herbicides in-service and that he has a diagnosis of prostate cancer that has become manifest to a degree of 10 percent or more after service, entitlement to service connection is warranted on a presumptive basis and the Veteran's claim is granted. 38 U.S.C.A. §§ 1110, 1116, 1131 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014). 


ORDER

Entitlement to service connection for prostate cancer is granted. 


REMAND

Outstanding Records

As will be discussed below, the Veteran's remaining claims are being remanded. Initially, however, there are outstanding records that require action on remand. The Veteran submitted a VA Form 21-4142 (Authorization and Consent to Release Information to the Department of Veterans Affairs (VA)) in July 2014 for Dr. B.R. (from a practice in Selma, Alabama) which listed treatment from this provider for disabilities of skin condition, chloracne, heart condition, neuropathy lower extremities bilateral. No effort, however, was made to obtain records from this private provider upon receipt of the VA Form 21-4142 in July 2014. In addition, at the February 2015 Board hearing, the Veteran stated that he was receiving treatment from a private doctor in Selma for "all of the issues" that are on appeal, which was an apparent reference to Dr. B.R. See Board Hearing Transcript, page 13. As the Veteran submitted a VA Form 21-4142 for Dr. B.R. and has indicated that treatment was received from this provider for all of the issues on appeal, on remand, VA must attempt to obtain any available records from Dr. B.R. 

In addition, the most recent VA treatment of record is from May 2013. While on remand, any outstanding VA treatment records must be obtained. 

Finally, a September 2012 VA treatment note stated that the Veteran received his medication from an outside provider, specifically Maxwell Air Force Base. It is unclear if the Veteran received any medical care from Maxwell Air Force Base or if he just received medication. On remand, the Veteran must be contacted to clarify whether he received medical care from Maxwell Air Force Base; if he has, effort must be taken to obtain any available medical records.

Skin Condition

VA regulations provide that certain diseases associated with herbicide exposure in-service may be presumed service connected, to include chloracne or other acneform disease consistent with chloracne, so long as such condition "became manifest to a degree of 10 percent or more within a year after the last date on which the [V]eteran was exposed" to herbicides. See 38 C.F.R. §§ 3.307, 3.309 (2014). As decided above, the Veteran was presumed to have been exposed to herbicides in-service. 

At the February 2015 Board hearing, the Veteran referenced going to sick call for "the stuff I had on my hands and everything" and being prescribed a cream. See Board Hearing Transcript, page 12. The Veteran stated that after getting out of the military, he continued to buy cream and stated that "it's still all over," presumably in reference to a skin condition. In a statement dated June 2, 2014, the Veteran stated that he had "scaly skin lesions on various parts of my body." See id. at 13. In a statement dated June 30, 2014, the Veteran stated that "I still have bouts of lesions and Chloracne on my body." Review of the Veteran's STRs reveals multiple complaints for various skin conditions. In light of the Veteran's competent and credible statements relating to having some sort of skin condition, as well as his conceded in-service herbicide exposure and in-service skin complaints, remand is required for a VA examination that addresses whether the Veteran had chloracne in-service and whether any current skin condition is related to his active service. 

Kidney Condition

A Kidney Conditions (Nephrology) Disabilities Benefits Questionnaire (VA Form 21-0960J-1) from Dr. B.B. dated July 2012 noted that the Veteran had neoplasm of the kidney and had a left nephrectomy plus 18 inch colectomy in February 1989 secondary to renal cell carcinoma. 

At the February 2015 Board hearing, the Veteran's representative stated that 

[T]he kidney is not part of the presumptive list but I definitely would go on the record to contend that some of the medications that he has been taking for the neuropathy, for the prostate cancer, for the Chloracne and ischemic heart disease could have caused his kidney to fail. See Board Hearing Transcript, page 15. 

As noted above, entitlement to service connection for prostate cancer has been granted; the Veteran's other claims for entitlement to service connection are being remanded. In light of the Veteran's representative's statement at the February 2015 Board hearing raising the issue of secondary service connection with respect to the Veteran's service-connected (as granted herein) prostate cancer and the Veteran's statement at the February 2015 Board hearing that he was receiving treatment for "all of the issues" on appeal from private providers (an apparent reference to Dr. B.R.), the Veteran's kidney condition claim must be remanded to provide the Veteran an opportunity to provide evidence indicating that kidney cancer may be due to or aggravated by medication taken for service-connected disability. 

It is also noted that service treatment records include a DD Form 1141, Record of Exposure to Ionizing Radiation, and cancer is a "radiogenic disease" pursuant to 38 C.F.R. § 3.311. To date, there has been no contention that kidney cancer resulted from ionizing radiation exposure in service, however, the Veteran is free to raise this contention to VA if he feels his kidney cancer may be related to ionizing radiation exposure. See 38 C.F.R. § 3.311(a) (2014).
 
Neuropathy of the Bilateral Lower Extremities

Service connection is presumed for "early-onset" peripheral neuropathy that manifests to a compensable (10 percent) degree or more within one year after the date of last exposure to herbicides. There is no presumption of service connection for "delayed-onset chronic" peripheral neuropathy. See 38 C.F.R. §§ 3.307, 3.309 (2014); see also 78 Fed. Reg. 54763-01 (Sept. 6, 2013).

In a statement dated June 30, 2014, the Veteran stated that he "got numbness and tingling in my feet" while in-service at Clark Air Force Base and that "[e]ventually it got so bad I complained to my civilian doctor so many years ago, he put me on gabapentin." At the February 2015 Board hearing, the Veteran testified that his neuropathy began in the military with his toe. See Board Hearing Transcript, page 18. He also stated that he saw a doctor and was given medicine that helped, but that every once in a while he still gets pain that shoots down his leg. Id. An August 2008 VA treatment note contained an assessment of neuropathy and a September 2012 VA treatment note included gabapentin as an active medication. The Veteran is competent to testify to symptoms of pain, numbness and tingling in his lower extremities. Based on the Veteran's competent and credible statements as to in-service issues related to his toe and feet and his current complaints of symptoms and the VA treatment discussed above, remand is warranted for a VA examination to address whether the Veteran's currently has neuropathy of the bilateral lower extremities and etiology thereof. 

Heart Condition

Ischemic heart disease is a condition for which service connection may be presumed based on in-service herbicide exposure, which as noted above, has been presumed for the Veteran. See 38 C.F.R. §§ 3.307, 3.309 (2014). The record, however, is unclear whether the Veteran suffers from ischemic heart disease. For example, a private medical record from Hearth South Cardiovascular group dated February 2013 noted that an EKG was completed in February 2013 and review of the findings section showed that there was no reference to ischemic heart disease. The February 2013 note did not contain a diagnosis of ischemic heart disease under the assessment section, instead noting problems of dyspnea, complete AV block and diastolic dysfunction. At the February 2015 Board hearing, however, the Veteran testified that he had been diagnosed with coronary disease or ischemic heart disease and that the diagnosis was "in the record somewhere." See Board Hearing Transcript, page 10. As noted above, the Veteran submitted a VA Form 21-4142 for Dr. B.R. in July 2014 that noted treatment for a heart condition. As these outstanding records may contain relevant records, remand is required for the Veteran's heart condition, to include ischemic heart disease, claim.

In addition, on the Veteran's March 1977 Report of Medical History, he reported having ever had or now having shortness of breath and pain or pressure in chest. On the accompanying March 1977 separation examination report, while noting that the Veteran's heart was normal upon clinical evaluation, complaints were noted of shortness of breath and pain in chest and stated "not evaluated, exam this date, normal, EKG, normal, [no complications, no sequelae]." Noted under the summary of defects and diagnoses section was "sinus bradycardia with nonspecific T waive changes." A March 1977 Electrocardiographic Record was also of record. As the Veteran's separation examination noted a defect and diagnosis related to the Veteran's heart, on remand, a VA examination must also be conducted that addresses whether Veteran's currently has any heart condition and the etiology thereof.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2014). Expedited handling is requested.)

1. With any necessary assistance from the Veteran, attempt to obtain any available records from Dr. B.R., as identified in the July 2014 VA Form 21-4142.

Also request that the Veteran provide information and evidence concerning the assertion that the claimed kidney disorder is due to or aggravated by medication taken for a service-connected disorder, which may include medical literature in support of the contention.

2. Obtain any outstanding VA treatment records (the most recent records are dated May 2013).

3. Contact the Veteran and ask him to clarify whether he has received medical care from Maxwell Air Force Base. If he has, appropriate effort to obtain any available medical records must be taken.

4. After completion of the above, afford the Veteran a VA examination to determine the current diagnosis of any skin condition present and the etiology thereof. 

The examiner must address the following:

a. Does the Veteran have a current diagnosis of chloracne or other acneform disease consistent with chloracne? If so, is it at least as likely as not (i.e., a probability of 50 percent or greater) that such condition manifested in-service? If so, the examiner is asked to identify at what date such condition manifested and to describe the disability picture associated with such manifestation. 

b. Does the Veteran have a current diagnosis of a skin condition (besides chloracne or other acneform disease consistent with chloracne)? If so, is it at least as likely as not (i.e., a probability of 50 percent or greater) that such condition is related to any in-service disease, event, or injury?

While review of the entire claims folder is required, attention is invited to the various service treatment records that contained complaints and treatment related to the Veteran's skin. Attention is also invited to the Veteran's statements that he had had skin problems that continued after his active service. See February 2015 Board Hearing Transcript, pages 12-13 (stating that he was prescribed cream in the military and that he continued to buy cream after getting out of the military).

The examiner must provide a thorough rationale for his or her conclusion. The examiner is reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

5. After completion of steps 1-4 above, afford the Veteran a VA examination to determine whether the Veteran has neuropathy of the bilateral lower extremities, and the etiology thereof.

The examiner must address the following:

a. Does the Veteran have a current diagnosis of "early-onset" peripheral neuropathy of the bilateral lower extremities? If so, is it at least as likely as not (i.e., a probability of 50 percent or greater) that such condition manifested in-service? If so, the examiner is asked to identify at what date such condition manifested and to describe the disability picture associated with such manifestation. 

b. Does the Veteran have a current diagnosis of neuropathy of the bilateral lower extremities (besides "early-onset" peripheral neuropathy)? If so, is it at least as likely as not (i.e., a probability of 50 percent or greater) that such condition is related to service to include presumed herbicide exposure?

While review of the entire claims folder is required, attention is invited the Veteran's reported in-service issues related to his toe and feet. See June 30, 2014 Veteran statement (stating that he "got numbness and tingling in my feet" while in-service at Clark Air Force Base and that "[e]ventually it got so bad I complained to my civilian doctor so many years ago, he put me on gabapentin"); February 2015 Board Hearing Transcript, page 18 (stating that his neuropathy began in the military with his toe). Attention is also invited to an August 2008 VA treatment note that contained an assessment of neuropathy and a September 2012 VA treatment note that included gabapentin as an active medication. 

The examiner must provide a thorough rationale for his or her conclusion. The examiner is reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

6. After completion of steps 1-4 above, afford the Veteran a VA examination to determine whether the Veteran currently has any heart condition and the etiology thereof.

The examiner must address the following:

a. Does the Veteran have a current diagnosis of any heart condition? Please address whether any diagnosis of ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina) is appropriate.

b. If the Veteran has a heart condition, other than ischemic heart disease, is it at least as likely as not (i.e., a probability of 50 percent or greater) that such condition began in or is related to any in-service disease, event, or injury?

While review of the entire claims folder is required, attention is invited the Veteran's March 1977 Report of Medical History (reporting having ever had or now having shortness of breath and pain or pressure in chest), the March 1977 separation examination report (noting under the summary of defects and diagnoses section "sinus bradycardia with nonspecific T waive changes") and the March 1977 Electrocardiographic Record. 

The examiner must provide a thorough rationale for his or her conclusion. The examiner is reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

7. After completing the requested actions, and any additional development deemed warranted, readjudicate the claims in light of all pertinent evidence and legal authority. If the benefits sought remain denied, furnish to the appellant and his representative a supplemental statement of the case and afford them the appropriate time period for response before the claims file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
S. S. Toth
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs